**James A. GORSO**

v.

**BELL EQUIPMENT CORPORATION**

v.

**The MARLEY COMPANY et al.**

Civ. A. Nos. 68–1356, 69–20, 69–21, 69–23, 70–1177.

United States District Court,
W. D. Pennsylvania.

Aug. 18, 1971.

Stokes, Lurie & Tracy, Pittsburgh, Pa., for plaintiff.

Lancaster, Mentzer, Coyne & Duffy, Weis & Weis, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER DENYING MOTION TO DISMISS

KNOX, District Judge.

In this civil action the plaintiff seeks to recover damages for injuries sustained on October 6, 1968, while working at a construction project near Huff, Pennsylvania. It is alleged that the injuries were caused by a defective crane, which crane was manufactured in France by Societe de Construtiones Mecaniques du Bugey (Societe) and sold F. O. B. France by Tichauer et cie (Tichauer) to Bell Equipment Corporation (Bell), which in turn sold the crane to The Marley Company (Marley).

The complaints filed at the above numbers have alleged that the crane was defective when sold to Marley. Bell has alleged that if the crane was defective, it was defective when manufactured by Societe and sold to Bell by Tichauer. Bell has attempted to join the seller Tichauer and the manufacturer Societe as third-party defendants. Both Tichauer and Societe have moved to dismiss the third-party complaint for lack of personal jurisdiction. Tichauer and Societe are French corporations having no offices, servants or assets, tangible or intangible in the United States. Third-party defendants assert that although Bell had the exclusive rights for distribution of the crane in the United States, the crane in question is the only one ever sold to Bell. It is further asserted that at the time the crane was manufactured by Societe and sold to Tichauer and then resold by Tichauer to Bell, neither of the French companies knew that the crane would be used in Pennsylvania.

On the facts of this case, the sole issue requiring decision by this court is whether the third party defendants are or ever were "doing business" in Pennsylvania. Jurisdiction in the instant case is dependent on an interpretation of the Pennsylvania long arm statute applicable to foreign corporations, 15 P.S. § 2011(C) (1971 Supp.) [1]

[1] "For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'. *For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.*" (emphasis added) As amended 1968, July 20, P.L. ——, No. 216, § 54, effective in 30 days.

While no controlling case has been found which interprets the specific language of the 1968 Amendment to the long arm statute, clearly the language indicates an intention to extend the court's jurisdiction to the Constitutional limits as announced in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Having by contract given Bell the exclusive sales rights in the Territory of the United States and Puerto Rico, surely these French corporations ought not to feign surprise when one of their cranes, allegedly defective, reaches Pennsylvania and causes injury to its citizens. Such an eventuality must have been reasonably foreseeable in this age of advanced marketing. This court, instructed by the recent well-reasoned opinion of Judge VanArtsdalen in the Eastern District,[2] finds the facts of this case sufficient to establish that the French corporations, third-party defendants herein, made an "indirect shipment" into Pennsylvania and were "doing business" within the purview of the Pennsylvania Statute. The court, in Benn v. Linden Crane Co., expressed itself as follows:

"A shipment of goods indicates a conscious placement of those goods into the stream of commerce. Obviously, if a manufacturer sells his products directly to the ultimate consumer, the movement of those goods pursuant to the sale would be a direct shipment. However, economic and business reasons dictate that goods will pass through any number of people in a distributive chain before they reach the ultimate consumer. It is the movement of goods through this distributive chain that in this case constitutes an 'indirect shipment'. Linden-Alimak manufactured and sold a crane f. o. b. Swedish port to a purchaser (also a co-defnedant) that had exclusive control over shipment of the manufacturer's products to the United States. Linden-Alimak had reason to know that the crane would be resold for ultimate use and operation in the United States. The crane, while being operated in Pennsylvania, allegedly injured plaintiff by reason of a malfunction claimed to be caused by the negligence of the manufacturer and others. Under these facts, I find that Linden-Alimak made an 'indirect shipment of goods" into Pennsylvania and was 'doing business' within the definition of the Pennsylvania statute."

In the recent case of Scafati v. Bayerische Motoren Werke AG, 53 F.R.D. 256 (U.S.W.D.Pa.1971), a German automobile manufacturer was found by Judge McCune of this court to be properly within our jurisdiction. In that case, the plaintiff's decedent, driving one of defendant manufacturer's automobiles, was killed in an automobile accident on March 22, 1969. The complaint averred that death was caused by defective auto design. The defendant, asserting it had no office, agent or employee in the United States, moved for dismissal. Finding that B.M.W. had indirectly shipped goods into Pennsylvania and was doing business in this state for the purposes of 15 P.S. § 2011(C), the court denied the motion to dismiss.

The Pennsylvania legislature has a legitimate interest in the safety of its citizens and in providing them with a local forum for enforcing their rights as long as such legislative protection does not offend one's sense of fair play and equal justice. In the present case, the exclusive sales contract given Bell surely contemplates the ultimate arrival of the French corporation's cranes within Pennsylvania. While plaintiffs do have a remedy against the original defendant (Bell), in the spirit of equal justice Bell must be given the opportunity to assert indemnification against these French corporations which placed an allegedly dangerous and defective product into the channels of commerce.

For these reasons, the Motion to Dismiss will be denied.

---

2. Benn v. Linden Crane Co., 326 F.Supp. 995 (U.S.E.D.Pa., 1971).