ance with these requirements for notice and hearing.

e. a federal prisoner in segregated confinement shall have the same access to medical care as other prisoners.

6) Defendant Lark and his successor or successors in office will be enjoined from opening any outgoing mail from federal prisoners addressed to any court, attorney, elected official, any investigative agency of the United States or of any of the several states or of any municipality. Incoming mail identified by return address on envelope as coming from any such court, attorney, elected official or agency may only be opened and inspected in the prisoner's presence for contraband, but shall not be read. The envelope may be discarded, and contraband may be confiscated.

The court believes that, in light of remedial procedures instituted at the city jail since the filing of this action, no additional specifications are required at this time to assure to federal prisoners their First, Eighth and Fourteenth Amendment rights. It is anticipated that these orders can and must be implemented without prejudice to the same Constitutional rights of non-federal prisoners.

Monetary damages to plaintiff are denied. Class damages are inappropriate. No notice having been requested, the court concludes that declaratory and injunctive relief are the only appropriate remedies for this class.

The parties are directed to prepare and submit within 15 days a proposed judgment and decree which will embody the foregoing plan of remedial relief. The court will retain jurisdiction to assure compliance with such judgment and decree.

The foregoing Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

So ordered.

**Fred R. KNAPP and Lillian M. Knapp**

v.

**FRANKLIN COACH COMPANY and Paul Able**

v.

**WAGNER MOTOR SALES, INC.**

Civ. A. No. 86–72 Erie.

United States District Court,
W. D. Pennsylvania.

Oct. 16, 1973.

Robert Spaeder, Erie, Pa., for plaintiffs.

John Wolford, John Gent, Erie, Pa., for defendants.

## OPINION

KNOX, District Judge.

There is before the court another of the myriad of cases questioning jurisdiction in personam as the result of the widespread enactment of so-called "long-arm" statutes by the various states. Pennsylvania is a recent comer in this field and we are primarily concerned with the new codification contained in Act No. 271 of November 15, 1972, effective February 13, 1973, 42 Purdon's Supplement, Appendix 2, Sections 8301, et seq., particularly Section 8309(b), wherein the Pennsylvania Legislature states that its courts are to exercise jurisdiction and venue over all foreign corporations to "the fullest extent allowed under the Constitution of the United States." This statute was apparently enacted after a series of acts attempting to push back the perimeters of Pennsylvania's jurisdiction over foreign corporations and individuals causing damage in Pennsylvania which attempts had been frustrated by a series of limiting decisions of the courts.

We have before us a diversity action arising out of a collision which occurred in Erie County, Pennsylvania, on August 2, 1971, when plaintiff's automobile was struck by a tractor bearing Indiana license plates operated on the business of the defendant, Franklin Coach Company. Franklin Coach Company claimed that the brake system on the tractor had failed as a result of faulty workmanship by the third party defendant, Wagner Motor Sales, Inc., an Ohio Corporation and instituted proceedings to join Wagner as a third party defendant. Particularly, it was claimed that the tractor in question had been repaired at Wagner's place of business in Wauseon, Ohio (near the Ohio Turnpike, west of Toledo in the western part of Ohio) and in the course of repairs, the mechanic had moved the exhaust pipe so that it was in a dangerous juxtaposition or in contact with the brake line containing the fluid used for applying the brakes on the tractor and that as the result of the dangerous position, the brake line was severed and the tractor was left without brakes which caused the collision.

The defendant Wagner had previously filed a motion to dismiss which was denied by order of this court on June 4, 1973, without prejudice to renewal of the same after the facts pertaining to it had been fully developed. Third party defendant now claiming that these facts have been fully developed, has filed a second motion to dismiss for lack of personal jurisdiction over it, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The question involved may be stated as follows: "Is a repairman who performs repairs on a motor vehicle in another state without specific notice that the vehicle is to be driven into the State of Pennsylvania liable when the vehicle is subsequently involved in a collision in Pennsylvania as the result of the negligent performance of such repairs but without the failure of any part installed by him?" It is the court's opinion that in the present state of the law, the question will have to be answered in the negative.

The third party defendant is a General Motors dealer whose business is the sale and service of automobiles. It transacts no business in Pennsylvania and is not authorized to do business there. It has twenty one employees. Its service work on automobiles of interstate origin constitutes less than one percent of its business and of these, Pennsylvania vehicles would be a much smaller percentage. It

will, however, repair the vehicle of anyone brought to their establishment which they can accommodate. On August 2, 1971, a truck tractor owned by the defendant Franklin Coach Company was brought to third party defendant's place of business in Wauseon and the mechanic, one Herbert Dewey, no longer employed by third party defendant, replaced a vent in the rear transmission housing and replaced oil and grease therein. In the course of doing so, he was required to remove the exhaust pipe and replace it. In replacing it, it is claimed that he left it in a position close to the line containing the brake fluid used for applying the brakes, that it was replaced in a dangerous situation, with the result that when the vehicle reached Pennsylvania leaving the eastbound discharge ramp of Interstate 90 onto Pennsylvania Route 18, the brakes failed and it crashed into plaintiff's automobile causing injuries.

Other evidence indicates that the truck tractor which was repaired bore an Indiana license plate, although third party defendant stated that no attention was paid to the license plates of vehicles being repaired. It further appears that the defendant Franklin Coach Company located in Nappanee, Indiana was engaged in transportation at the time as a private hauler and hence the vehicle bore no Interstate Commerce Commission certificate number from which information might have been derived that the vehicle was going on into Pennsylvania, approximately 225 miles to the east. There is no showing that this automobile service garage had ever repaired vehicles for this customer before and hence would have no knowledge of the scope of its operation.

In reaching a solution to our question, we will have to break new ground in view of the recent adoption by the Pennsylvania Legislature of its new Long Arm Statute, 42 P.S. 8301 et seq. The relevant Sections are 8301, 8302, 8303, 8307, 8308 and 8309 which are set forth in the Appendix attached to this opinion. This legislation was approved November 15, 1972, effective ninety days thereafter or February 13, 1973. It was pursuant to this statute that service upon the third party defendant was effected.

It is noted that Section 8303 might be broad enough to cover this situation but it clearly applies only to tortious acts of individuals. We must particularly therefore determine whether Pennsylvania has jurisdiction under Section 8309 governing foreign corporations. It is noted that the five situations specified in subsection (a) of 8309 are inapplicable to this case except possibly number three: "The shipping of merchandise directly or indirectly into or through this Commonwealth".

We do not, however, have to concern ourselves with this problem (As noted, the part itself installed by the third party defendant on the vehicle which subsequently came into Pennsylvania did not fail.) because of subsection (b) which reads:

"Exercise of full constitutional power over foreign corporations.—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

We must, therefore, consider, at least partially, what are the perimeters of Pennsylvania jurisdiction over foreign corporations under the United States Constitution.

Recently, this court was reversed by the Third Circuit in Gorso v. Bell Equipment Corporation, 3 Cir., 476 F.2d 1216, reversing 330 F.Supp. 834 (W.D.Pa. 1971) for extending Pennsylvania jurisdiction to include a French corporation which had manufactured a crane which was sold to the distributor and ultimately came to Pennsylvania where it caused injuries to Pennsylvania plaintiff. The Circuit held that Pennsylvania decisions under prior Pennsylvania Statutes, despite the numerous amendments by the Pennsylvania Legislature in an attempt

to meet limiting court decisions, did not extend jurisdiction to a single isolated incident such as sending a piece of machinery through the stream of Interstate or Foreign Commerce into Pennsylvania. The court, however, specifically disclaimed any holding that jurisdiction could not be effected under 42 P.S. 8309 (b) since service had not been attempted under it. It further held that in view of the statutory construction of the Pennsylvania Statute, the court would not reach the Constitutional question raised by 8309(b). It specifically was the holding of the court that there were insufficient activities within Pennsylvania to render the French corporation subject to personal service under previous Pennsylvania legislation.

On the other side of the coin, however, is the recent decision of McCrory Corporation v. Girard Rubber Corporation (Pa.Super.1973) 307 A.2d 435. McCrory involved the shipping of merchandise indirectly into the state. It was a suit against a manufacturer of rubber tips which were affixed to toy bows and arrows by a Tennessee manufacturer and then in turn shipped to McCrory, a large national chain of stores, which made a sale in Pennsylvania of a defective rubber tip which resulted in injury to a minor's eye. In a suit by the store chain against the manufacturer of the rubber, the Superior Court upheld a lower court decision sustaining service upon the manufacturer under prior Pennsylvania law. The court reiterated the minimum contacts test under International Shoe Company v. Washington, infra, and quoted at length from the decision of the ninth circuit in Duple Motor Bodies Limited v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969) involving a British manufacturer of coach bodies which brought injury to a person in Hawaii as follows:

"We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, *either directly or through the normal distributive channels of trade*. If it is clearly *foreseeable* as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade." (Emphasis added).

The court further quoted from Cecere v. Ohringer, 208 Pa.Super. 138, 220 A.2d 350 (1960) as follows:

"This approach seems unduly harsh in an era of instant communication, rapid transportation and modern marketing methods which frequently involve distribution of products on a nationwide scale without regard to state boundaries. . . . To allow a company to send its products in interstate commerce and yet remain subject to suit only within its own state borders appears patently unfair.

" . . . A manufacturer should be subject to jurisdiction when his product gives rise to a cause of action within a foreign jurisdiction, even though it had no other contact with the state. The foreign corporation's economic purpose and objective is to develop a market for its product in the foreign jurisdiction. It avails itself of the privilege of conducting activities within the state. It knows that its manner of commerce will have consequences in the foreign state."

McCrory indicates that the Pennsylvania courts are adopting a more liberal attitude and sustaining service against foreign manufacturers who directly or indirectly ship their merchandise into Pennsylvania.[1]

While service on a foreign corporation shipping merchandise into a state may

1. The McCrory case is presently on appeal to the Supreme Court of Pennsylvania and argument thereof was held on October 1, 1973. This court is not postponing decision in the instant case because the facts in McCrory are different and involve the shipping of merchandise directly or indirectly into the state. We do not find this case involves such shipments.

be sustained under the rationale of McCrory, that does not dispose of the instant litigation. Here the third party defendant Wagner shipped no merchandise into Pennsylvania except for the replacing of the vent in the course of repairs. There is no defect alleged with respect to the vent itself but rather the only negligence complained of is that the exhaust pipe was replaced faultily resulting in the severing of the brake line.

This court is not prepared to say that the making of a faulty repair by an automobile dealer and garage in western Ohio, 225 miles from the Pennsylvania border, to a vehicle bearing Indiana license plates, being an isolated instance, should in and of itself subject such automobile garage to service in Pennsylvania.

In reaching this decision, we have no clearer expression of the teachings of the United States Supreme Court in this area than that contained in International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) where Chief Justice Stone reviewed this whole area of law. The holding of International Shoe is best summed up in the following quotations:

". . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'."

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, [95 U.S. 714, 24 L.Ed. 565] supra; Minnesota Commercial Assn. v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573."

In the instant case, we hold that the third party defendant in this case has had insufficient contacts with the State of Pennsylvania to subject it to service in that state's courts including a federal court sitting in the state. While we recognize the argument as to the mobility of the modern motor vehicle, which mobility has increased since the construction of the new system of interstate highways, we must bear in mind that this problem equally existed in 1945 when International Shoe was handed down and has existed in this country to a great extent for over fifty years. We recognize that in the case of the non-resident motorist, the United States Supreme Court has long ago sustained service upon him when he gets himself involved in an accident in a foreign state. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). We regard that as an entirely different situation from that of the foreign repair shop who makes some repairs upon a vehicle which enters a foreign state. As a matter of fact, in International Shoe Company, supra, the court had dealt with Hess v. Pawloski as follows:

"Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, [43 S.Ct. 170, 67 L.Ed. 372] other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. Cf. Kane v. New Jersey, 242 U.S. 160 [37 S.Ct. 30, 61 L.Ed. 222]; Hess v. Pawloski, [274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091] supra; Young v. Masci, [289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170] supra."

In this area, under International Shoe and under the teachings of our own Circuit in Gorso v. Bell Equipment, supra, the basic problem to be considered is whether it is fair under the circumstances of a given case to say that a defendant has had sufficient minimum contacts with a state to justify service upon him issued out of the courts of that state. A person operating a motor vehicle upon Pennsylvania highways has obviously greater contacts with that state than a repair shop far removed from Pennsylvania making repairs upon a vehicle which without any specific knowledge on the part of the repair shop later finds its way onto the highways of Pennsylvania. We are not prepared to hold that under International Shoe or Gorso v. Bell a repair shop located anywhere in the United States which makes repairs upon a vehicle can be sued in any other of the forty nine continental states of this union or by the same token any of the provinces of Canada or states of Mexico into which the vehicle may finally go and be involved in an accident. This we believe offends the principles of fair play which we are taught to apply under International Shoe.

There may be situations where a repair shop may be subject to such suit, such as where it is located close to the borders of Pennsylvania, within a mile or two of the Pennsylvania state line, and derives a substantial portion of its repair shop business from Pennsylvania motorists and is sued for faulty repairs which result in a Pennsylvania vehicle later being involved in an accident in Pennsylvania. We will, however, have to decide these cases as they arise based upon the particular facts. It is sufficient to say for the purpose of this case that insufficient contracts have been shown between the third party defendant and the State of Pennsylvania to justify service upon it and an extension of jurisdiction over it by this Federal Court sitting in Pennsylvania. An appropriate order will be entered.