**Siegel v. Stahlfield**

*Stanley V. Ostrow,* for plaintiffs.
*Chester S. Fossee,* for defendant.
*John E. Kunz,* for additional defendants.
*Bernard J. McAuley,* for Albert C. Havrilla.

DOYLE, J., November 15, 1973.—This matter is before the court en banc on a motion for summary judgment filed by Volkswagen of America, Inc. (VWA) under Pennsylvania Rules of Civil Procedure 1035 and on preliminary objections (petition raising question of jurisdiction) filed by Volkswagenwerk AG (VWAG) under Pa. R.C.P. 1017(b)(1). Both corporations have

been impleaded as additional defendants by Joan S. Stahlfield, the original defendant.

VWAG is a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal office and manufactory in Wolfsburg, Germany, where it assembles motor vehicles (cars). VWAG is not registered to do business, and maintains no office or place of business, in the Commonwealth of Pennsylvania. VWA is a corporation organized and existing under the laws of the State of New Jersey, with its principal office in Englewood Cliffs, N.J. VWA is not registered to do business, and maintains neither business offices nor personnel in Pennsylvania.

VWAG makes contracts in Germany with other corporations, e.g., VWA, VWI,[1] etc. *and sells* its cars in Germany to VWA, VWI, etc., all of which purchasing corporations are incorporated in nations other than Germany. However, all of the shares of capital stock of VWA, VWI, etc., are owned by VWAG.

The cars are then shipped from Germany to VWA, VWI, etc. VWA is the exclusive United States of America (USA) importer of Volkswagen cars. After their arrival in USA, VWA sells the cars to 14 wholesale distributing corporations. These distributors take title to the cars at the delivery point and sell and reship the cars to independent dealer-corporations which sell the cars in the retail market. All of capital stock of the wholesale distributing corporations and of the retail-dealer corporations is owned by citizens of USA who are unrelated to either VWAG or VWA. See Delagi v. Volkswagenwerk AG, 29 N.Y. 2d 426 (1972).

A certain 1962 model Volkswagen Type I Sedan bearing chassis number 4 757 844 (the Stahlfield car) was manufactured in Germany by VWAG and sold by VWAG on June 14, 1962, to Volkswagen Interameri-

---

[1] See infra.

cana S.A. (VWI)[2], a corporation organized and existing under the laws of Mexico, and a Volkswagen importer having its principal place of business in Mexico City, Mexico.[3] During June of 1962, while in Aruba, Netherlands Antilles, Donald Stahlfield (original defendant's husband) purchased the Stahlfield car *new* from Aruba Volkswagen Namloose Verschoopschaps, N.V.[4] (Aruba VW), a retail-dealer corporation organized and existing under the laws of the Netherlands. During December of 1962, the Stahlfield car, at the instance of Donald Stahlfield, was transported by ocean freighter to the port of New York, U.S.A., and there delivered to Donald Stahlfield who transported it to Glenshaw, Pa. where he resided with his wife, the original defendant, Joan S. Stahlfield.

On February 22, 1972, nine and one-half years and 80,000 miles later, Joan S. Stahlfield was operating the Stahlfield car in a westerly direction on Burchfield Road, Shaler Township, Allegheny County, Pa., when, she alleges, a mechanical defect caused the brakes to malfunction, resulting in a rear end collision with a car operated by one of the plaintiffs, Valerie Seigel. On April 17, 1972, plaintiffs filed a complaint in trespass against Joan Stahlfield to recover money damages for personal injuries allegedly resulting from that collision.

On August 11, 1972, Joan Stahlfield impleaded VWAG and VWA[5] as additional defendants, alleging

[2] Not a party to this action.

[3] Per affidavit of Hans-Viggo von Hülsen, general counsel of VWAG, filed with the motion for summary judgment.

[4] Not a party to this action.

[5] She also impleaded Albert C. Havrilla, individually and t/d/b/a Havrilla's Gulf Station, where the Stahlfield car passed a Pennsylvania motor vehicle inspection some four months prior to the collision. Havrilla is not involved in the matters now before the court.

that one or both of these corporations was the vendor, or were the vendors of the Stahlfield car and strictly liable to plaintiffs, or jointly liable with Joan Stahlfield to plaintiffs, or liable over to original defendant Joan Stahlfield for any loss arising from the collision.

On October 2, 1972, Stahlfield petitioned the court for permission to obtain in personam jurisdiction over VWAG and VWA by making substituted service of process on each of them by serving the process upon the Secretary of the Commonwealth, averring that VWAG and VWA are foreign corporations and "are doing now or have done in the past, certain acts, including a systematic distribution of their product through franchised dealers to various places of business within this Commonwealth. Pecuniary benefits were derived by the defendant [sic] from said distribution." On September 27, 1972, the court (Price, J.) authorized such service "pursuant to P. L. 703 s/s 1 [sic] as amended 13 August 1963, 15 PS §2011."[6]

On November 10 and 13, 1972, substituted service was made on VWA and VWAG, respectively, by serving the Secretary of the Commonwealth who delivered copies of all papers to VWA and VWAG by registered mail.

## MOTION OF VWA FOR SUMMARY JUDGMENT

On January 4, 1973, VWA filed an answer to the impleading complaint and in its new matter denied that it was a vendor of the Stahlfield car. VWA avers that it: imports Volkswagen cars into U.S.A. only; has never imported Volkswagen cars into or through the Netherlands Antilles; was not a vendor of the Stahlfield car and could not be liable to plaintiffs or to the

---

[6] Amended by Act of July 20, 1968, P. L. 459 (No. 216), sec. 54, 15 PS §2011, repealed and replaced by Act of November 15, 1972, P. L. —, 42 Pa.S. §8301, et seq.

original defendant under Restatement 2d, Torts, §402A (strict liability).

Original defendant's complaint impleading VWA alleges that VWA sold the car to Joan Stahlfield. However, in his deposition, Donald Stahlfield testified that *he* purchased the car in the Netherlands Antilles from "Aruba VW." In her reply to VWA's new matter, the original defendant avers that she is "without sufficient information to admit or deny that VWA has never imported vehicles into the Netherlands Antilles." This averment (Pa. R.C.P. 1029 (c) ) is insufficient to prevent summary judgment from being granted in favor of VWA. In Bremier v. Volkswagen of America Inc., 340 F. Supp. 949 (D.D.C., 1972), involving strikingly similar facts, VWA filed a motion for summary judgment under Fed. R.C.P. §56(e).[7] In granting the motion the court wrote:

"Plaintiffs have failed to show, by affidavit or otherwise, how defendant [VWA] is other than a complete stranger to the transactions and occurrences underlying this law suit. . . defendant VWAG has submitted a sworn affidavit showing it never sold the car in question, or any car of the same model to [VWA], which is thus not in the chain of title beginning with VWAG and ending with [the owner of the vehicle at the time of the accident]. Under these circumstances, plaintiffs' assertion does not constitute the setting forth of specific facts, as required by Fed. R. Civ. P. §56(e). Indeed, had plaintiffs gone further and stated they believed defendant [VWA] had dealings with the vehicle, such statement would have been insufficient as 'an assertion which is unsupported by the facts or any evidence submitted' or an assertion which was 'at best a belief.' (citations omitted)." (Page 950.)

---

[7] Which is tracked by Pa. R.C.P. 1035 (motion for summary judgment).

VWA urges that it had no connection whatever with the manufacture, sale, servicing or delivery of the Stahlfield car. Its motion is supported by the affidavit of Von Hülsen (of VWAG) and the deposition of the purchaser of the car, Donald Stahlfield.

No counter-affidavit or other document has been filed by the original defendant which contradicts averments made in the affidavit of Von Hülsen or the deposition of Donald Stahlfield. Pennsylvania Rule of Civil Procedure 1035(d) prescribes that when a motion for summary judgment is made and supported as provided in the rule, an adverse party may not rest upon mere allegations or denials contained in his pleadings, but must, by counter-affidavits or other recognized devices, set forth specific averments showing the existence of a genuine issue requiring trial. The rule further prescribes that if no such response is forthcoming, the motion, if otherwise appropriate, shall be granted.

No issue of fact remains as to VWA; its motion for summary judgment will be granted.

## PRELIMINARY OBJECTIONS OF VWAG

On December 21, 1972, VWAG filed preliminary objections and on February 15, 1973, filed "supplemental preliminary objections" (petition raising a question of jurisdiction), denying that it is or was doing business in Pennsylvania, asserting that the service of process was invalid, demanding that it be stricken as a party and asserting that the court has no in personam jurisdiction over it. VWAG challenges the validity of the service under the Business Corporation Law (BCL) of May 5, 1933, P. L. 364, sec. 1011, 15 PS §2011, as amended.

The VWAG preliminary objection under Pa. R.C.P. 1017(b)(1) (petition raising a question of jurisdiction

over the person of VWAG) contains unverified (Pa. R.C.P. 1024) assertions which are not contained *in prior pleadings* filed against *VWAG*, contain no notice to plead (Pa. R.C.P. 1026) and might well have been stricken if a preliminary objection had been filed by the original defendant to the preliminary objection filed by VWAG. Goodrich-Amram § 1017(b)-5. The answer of the original defendant to VWAG's preliminary objection may be treated as a waiver of the notice to plead requirement, but the verification requirement is not waivable, since courts, under the scheme of the procedural rules, are not permitted to act upon unverified assertions. The "supplemental [sic] preliminary objection" filed by VWAG introduced an impermissible second dilatory step into the proceedings (Goodrich-Amram, supra, § 1017(b)-6), which should have been filed, if at all, as an amendment (Pa. R.C.P. 1033) to the original preliminary objection: Goodrich-Amram, § 1017(b)-6, supra. See also Goodrich-Amram, supra, § 1028(c)-2. Nor is the preliminary objection of *VWAG* cross-referenced to the motion for summary judgment of *VWA*, which does contain an affidavit of counsel for *VWAG*, as set forth, supra.

Service of process on VWAG was made by serving the impleader complaint on the secretary of the Commonwealth pursuant to BCL § 1011, 15 PS § 2011. Section 1011 was amended in *1968*. Only the 1968 amendment may be considered, notwithstanding that section 1011 has been further amended by 42 Pa.S. § 8301, *et seq.*, effective February 15, 1973: Myers v. Mooney Aircraft, Inc., 429 Pa. 177 (1967).

When the impleader complaint was filed against the VWAG and service was made on the Secretary of the Commonwealth, the legislative definition of "doing business" (BCL § 1011), provided:

"For the purposes of determining jurisdiction of

courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, *or* doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'. For the purposes of this subsection *the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.*" As amended July 20, 1968, P. L. 459 (Act No. 216), sec. 54, effective in 30 days. (Italics supplied.)

VWAG contends that service of process on the secretary is ineffective under the facts of this case to obtain jurisdiction over VWAG. The validity of that contention can be discovered only by determining whether or not VWAG was "doing business" in this Commonwealth. That issue must be determined on an ad hoc basis after studying the circumstances: Nettis v. Di Lido Hotel, 215 Pa. Superior Ct. 284 (1969).

Whether asserted "long-arm" jurisdiction over a foreign corporation comports with the "due process" clause of amendment XIV of the Constitution of the United States depends on the quality and nature of the activities of the corporation "in" or "relating to" the State that seeks to exercise in personam jurisdiction over that corporation. Amendment XIV does not contemplate that a court of a State of the United States may enforce an in personam judgment against an individual or corporation with which the State has no contacts or no legal relations; an appropriate legal nexus must be proved: International Shoe Co. v. State of Washington 326 U.S. 310 (1945).

VWAG's affidavit, attached to the VWA motion for summary judgment, avers that: VWAG is a corpora-

tion existing in Germany under the laws of Germany; VWAG is not registered to do business in the Commonwealth of Pennsylvania; VWAG owns no property, maintains no offices, employes, warehouses, etc. in Pennsylvania; the Stahlfield car was manufactured by VWAG at its facility in Germany and was sold to VWI of Mexico City, Mexico. If we treat the averments as having been made a part of the preliminary objection, and assume that the preliminary objection was properly verified and contained a notice to plead, we have a basis for decision of the issue.

Original defendant relies on the following language of the 1968 version of BCL §1011:

"[T]he *shipping of merchandise directly or indirectly into or through this Commonwealth* shall be considered the doing of such an act [as to constitute doing business] in this Commonwealth." (Italics supplied.)

Since VWAG is not the actual *shipper* or consignor of the cars from Germany (see discussion, supra, as to sale of the cars *in Germany* to VWA and VWI, etc.) it is asserted that the quoted language does not apply. Although large numbers of VWAG-manufactured cars are exported from Germany and imported into U.S.A. and are finally brought into this Commonwealth, the Stahlfield car reached Pennsylvania, not by way of any *direct* shipment by VWAG; rather it was transported into Pennsylvania solely at the instance of Donald Stahlfield and came into the possession of Joan Stahlfield when she assumed or reassumed her domcile of choice in Pennsylvania. Thus, it might be said that the cause of action anent the impleader proceedings, cannot be attributed to or is not connected with or related to acts or omissions of VWAG *in this Commonwealth.*

Prior to enactment of the 1963 version of BCL

§1011, substituted "long-arm" service was allowed only in an "action arising out of *acts or omissions* of such [foreign] corporation *within this Common-*wealth." After the 1963 amendment, substituted service was authorized in "any [cause of?] *action arising within* this Commonwealth": Act of August 13, 1963, P. L. 703, sec. 1, amending the Act of November 10, 1959, P. L. 1406, 15 PS §2011(b).

In the instant case, the cause of action against VWAG *matured,* if at all, in 1972, when the alleged latent defect caused the brakes of the Stahlfield car to fail and the Stahlfield car collided with and damaged plaintiff's car in Pennsylvania: Wilk v. Ensign-Bickford Co., 421 Pa. 161 (1966), holding that the cause of action arises against the manufacturer when the latent defect in his product culminates in an injury to a user or other person.

But the troublesome fact remains that VWAG, via its wholly-owned subsidiary VWA, does ship *cars* "directly or indirectly" into this Commonwealth, even though the *Stahlfield* car was not shipped by VWAG directly or indirectly into Pennsylvania, but arrived by a more circuitous physical route and through various non-U.S.A. subsidiaries of VWAG. Analogizing the law of legal causation, shipment of the car, as freight, from the Netherlands Antilles to New York State and operation of the car from New York to Pennsylvania, may be treated as intervening but not superseding circumstances in the chain of "shipping of merchandise directly or indirectly into or through this Commonwealth" by VWAG, even though the shipment to New York was made and the operation from there to Pennsylvania was performed at the instance of Donald Stahlfield.

Service of process on a nonregistered foreign corporation which directly or indirectly ships merchandise

into or through Pennsylvania is properly made by substituted service on the Secretary of the Commonwealth: Scafati v. Bayerische Motoren Werke AG, 53 F.R.D. 256 (W.D. Pa., 1971; E. J. McAleer & Co. v. Iceland Products, Inc., 22 Cumberland 42 (1972). While most cases construing BCL section 1011 relate to corporations created under the laws of States of USA, the language of the statute and the statutory definition of "Foreign Business Corporation," ["a corporation for profit, incorporated under any laws *other than* those of this Commonwealth . . ." 15 PS §1002[8]] compels the conclusion that the method of service employed here comported with the applicable procedures and standards recited in section 2011.[9]

It remains to be seen whether the Pennsylvania Supreme Court will adopt the "stream of commerce" theory gestated by some United States District Courts to justify *in personam* jurisdiction over *extra-national* unregistered foreign corporations whose allegedly defective products cause injury to users in this Commonwealth. See Scafati, supra; Benn v. Linden Crane Co., 326 F. Supp. 995 (E.D.Pa. 1971). Cf. Gorso v. Bell Equipment Corp., 476 F. 2d 1216, (3rd Cir. 1973), *reversing* 330 F. Supp. 834 (1971), which cases all involved the *1968* version of section 1011 applicable to the instant case: Scafati adopting Benn, supra, stated:

"When the realities of modern commerce are considered we do not think this holding [that a German

---

[8] This applies to nondomestic corporations, whether incorporated in another State of the United States or incorporated in a *foreign nation*.

[9] Whether an *in personam* judgment against VWAG, rendered by a Pennsylvania court, can be enforced *in Germany* is not before us for decision.

auto manufacturer was doing business in Pennsylvania by shipping cars to the U.S. for sale] unreasonable. The defendant has placed its automobiles into the channels of commerce. In the normal course of business they have passed through one or more middlemen ultimately arriving in Allegheny County. Whether the defendant sold the cars in Germany for shipment to the United States, or delivered them to the United States for sale in our view is immaterial. *It is the placing of the product into the channels of commerce and the ultimate arrival of the product in Pennsylvania that constitutes the 'indirect shipment' of goods into Pennsylvania.* The complaint in the instant case alleges that the product which defendant placed into the channels of commerce was inherently defective and dangerous. This condition is alleged to have caused an injury in Pennsylvania. We conclude that this is the situation that 15 PS §2011 subd. C was designed to reach. The manufacturer who allows a product to enter the channels of commerce may be subject to suit at any location where the product is normally placed in operation." (Italics supplied.) (Page 259.)

The Scafati court quashed the service on Bayerische Motoren Werke AG (German manufacturer of BMW cars), under Pa. R.C.P. 2180(c)[10] and section 2011(c) of BCL for failure to obtain precedent court authorization.

In Gorso the United States Court of Appeals (Third Circuit) held that BCL section 1011 (1968) did *not* ex-

[10] "If service cannot be made under any of the methods set forth in subdivision (a) or (b) of this rule, the court upon petition shall authorize service by registered mail directed to the Secretary of the Commonwealth and to the corporation or similar entity at its last registered address or principal place of business, or by publication as the court may direct."

tend the reach of long-arm jurisdiction to the maximum extent permissible under the "due-process" clause of the fourteenth amendment, and declined to apply the "stream of commerce" theory enunciated in Benn and Scafati, supra.[11]

Nevertheless, since 1968, the legislature has mandated that "indirect shipments" of goods into this Commonwealth constitute *doing business* in this Commonwealth for purposes of obtaining *in personam* jurisdiction over unregistered foreign business corporations. Although the *particular* car was not shipped directly into Pennsylvania by VWAG, it was shipped into Pennsylvania *indirectly* within the meaning of the statute.

Therefore, we hold that VWAG was "doing business" within this Commonwealth so as to make it amenable to substituted service of process and *in personam* jurisdiction of Pennsylvania courts.

Accordingly, the preliminary objections of VWAG are dismissed. An appropriate order will be entered.

## ORDER

And now, November 15, 1973, the motion for summary judgment filed by Volkswagen of America, Inc., is granted and original defendant's complaint impleading Volkswagen of America, Inc., as an additional defendant is dismissed.

The preliminary objection in the nature of a petition raising question of jurisdiction filed by Volkswagenwerk AG is dismissed and Volkswagenwerk AG is granted 20 days from the date of this order to plead to the complaint joining it as an additional defendant.

---

[11] It is noteworthy that 42 Pa.S. §8309(b), effective February 15, 1973, does contain an express statement that such is *now* the intent of the current version of BCL section 1011.