Howard L. **RASKIN**

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ERIE**

v.

The **BRADFORD GROUP, INC.** and **Midland Mortgage Company.**

**Civ. A. No. 28–73 Erie.**

United States District Court,
W. D. Pennsylvania.

March 21, 1974.

Bernard Goldstone, Sharon, Pa., for plaintiff.

David S. Gifford, Erie, Pa., for defendant.

William J. Schaaf, Erie, Pa., for third party defendants.

## OPINION

KNOX, District Judge.

There is again before the court a diversity case in which the federal court is called upon to decide the meaning and application of the new Pennsylvania Long Arm Statute, (Act of November 15, 1972, effective ninety days thereafter, 42 P.S. § 8309,) in the absence of any guiding decision by the Pennsylvania Supreme Court with respect to the question now before us.

This case involves a suit by the plaintiff, a citizen of Tulsa, Oklahoma, against First Federal Savings and Loan Association of Erie, Pennsylvania (First Federal) a Federal Savings and Loan Association with its principal offices in the City of Erie, Erie County, alleging that First Federal breached a contract of commitment to lend money upon a mortgage for financing a large furniture retail store and warehouse in Birmingham, Alabama. Plaintiff claims that as a result of the breach of agreement by First Federal, he has suffered various damages.

First Federal in turn claims that the real liability is that of the third party defendants, The Bradford Group, Inc. and Midland Mortgage Company, who had committed themselves to First Federal in connection with its commitment on this mortgage. Particularly, it is alleged that The Bradford Group, a nationwide mortgage broker, sought to induce First Federal to enter into the commitment by agreeing to sell participations in the mortgage to other institutions up to fifty percent of the principal amount. It is averred that Bradford had contacted First Federal and induced First Federal to make its commitment with Midland Mortgage in reliance upon Bradford's agreement to secure participations. First Federal claims that Bradford Group and Midland Mortgage then breached their contracts and commitments to First Federal as the result of which First Federal was unable to fulfill its commitment to the plaintiff and therefore the third party defendants are liable to First Federal for any sums of damages that may be adjudged against it in favor of the plaintiff.

There has been preliminary skirmishing with respect to the methods of service but it now appears that service was finally accomplished in accordance with Pennsylvania law as to foreign corporations, but the third party defendants now claim that they are not subject to the Pennsylvania Long Arm Statute above cited and that therefore this federal court is without jurisdiction of the

third party claims of the original defendant against them. Hence, they file motions to dismiss which are now before the court.

In passing upon this question, we must first consider the exact language of the new Long Arm Statute.

*"Acts affecting jurisdiction*

(a) *General rule.*—Any of the following shall constitute 'doing business' for the purposes of this chapter:

(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

\* \* \* \*

(b) *Exercise of full constitutional power over foreign corporations.*—In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States.

(c) *Exception.*—Notwithstanding any other provision of this section, for the purposes of determining jurisdiction of courts within this Commonwealth, inspecting, appraising and acquiring real estate and mortgages, and other liens thereon, and personal property and security interest therein, and holding, leasing away, conveying and transferring the same, as fiduciary or otherwise, or collecting debts and enforcing mortgages and rights in property securing the same by any foreign corporation shall not constitute 'doing business.' " 1972, Nov. 15, P.L. ——, No. 271, § 8309, eff. in 90 days.

■ It is obvious that in general the Pennsylvania Legislature intended by the enactment of this statute to exercise jurisdiction and venue over all foreign corporations to "the fullest extent allowed under the Constitution of the United States", and to push back the perimeters of Pennsylvania's jurisdiction over foreign corporations incurring liabilities in Pennsylvania, the previous attempts of the Pennsylvania Legislature having been frustrated by a series of limiting decisions by the court. See the decision of this court in Knapp v. Franklin Coach Co., et al., 365 F.Supp. 305 (D.C.1973). The court of appeals for this circuit in Gorso v. Bell Equipment Corporation, 476 F.2d 1216 reversed the decision of this court in 330 F.Supp. 834 (W.D.Pa.1971) with respect to service under prior law involving a single isolated incident involving the shipment of a piece of machinery through the stream of interstate or foreign commerce into Pennsylvania. In Gorso, however, the court specifically disclaimed any holding that jurisdiction could not be effected under 42 P.S. § 8309 since service had not been attempted under it.

■ In the instant case, the basic problem is whether service upon these third party defendants is in accordance with the principles of fair play expressed by the United States Supreme Court in International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 19 L.Ed. 95 (1945). The next inquiry is whether these third party defendants come within the provisions of 8309(c) with respect to exemption of certain real estate and financial activities. We will deal with these questions in this order.

A. *Pennsylvania Long Arm Statute Generally*

There seems little doubt that these third party defendants are within the reach of Pennsylvania's Long Arm since it appears that they fall within the scope of 42 P.S. § 8309(a)(1) and (2) and also fall within the perimeter of the

jurisdiction of the Pennsylvania Courts as set forth in 8309(b). It is noted that both of these third party defendants admit that they have been engaging in servicing mortgages in Pennsylvania in the past and there have been a series of such acts. Midland Mortgage admits the servicing (i. e., making collections, paying taxes and distributing funds) on numerous mortgages in the Philadelphia and Pittsburgh areas. The Bradford Group likewise admits that it has been contacting Pennsylvania institutions such as First Federal for the purpose of placing participations in their mortgages. It would therefore seem that these constitute a series of similar acts for the purpose of realizing pecuniary benefit under 8309(a)(1) and also, in this particular case, it seems that both were involved in the doing of a single act in the Commonwealth for the purpose of realizing a pecuniary profit and there is intention of continuing the same which would make them subject to jurisdiction under 8309(a)(2). Likewise, it would appear that there is nothing unfair about subjecting them to the jurisdiction of the Pennsylvania courts under International Shoe Company v. Washington, supra, since they have been making contracts and commitments with Pennsylvania financial institutions and also engaged in making commitments to sell participations in their mortgages.

### B. *The Exception*

The real difficulty in this case as to Pennsylvania's jurisdiction is found in 8309(c), the exception which has been set forth in full, supra. It should be observed that this exception first seems to have crept into Pennsylvania law in the Act of January 18, 1966 P.L (1965) 1305 Section 46 (15 Purdon's Pa.Stats. § 2011) wherein it was provided: *"the entry of any foreign business corporation into this Commonwealth, for the purpose of . . ."*.

When 8309(c) was enacted, the language underscored was dropped from the statute. If this language had been left in, the Act would have contained words "the entry of any foreign business corporation into this Commonwealth, for the purpose of—acquiring—mortgages—and holding—and transferring the same," which would appear clearly to except from the operation of the Long Arm Statute the preliminary activities in making commitments for mortgages and selling participations therein and hence we would have to sustain the defendant's motions to dismiss for lack of jurisdiction under Rule 12(b)(2) (lack of jurisdiction over the person).

■■ The deletion of these words, however, in enacting the Act of November 15, 1972, definitely gives rise to our problem as to whether an action for breach of contract with respect to commitments for mortgages and sale of participations therein is within the language of the exception. We hold that it is not clear that these third party defendants fall within the language of the exception and we will therefore uphold the jurisdiction of the Pennsylvania courts including this Federal Court in the Western District of Pennsylvania over these defendants.

In Midvale Company v. Unemployment Compensation Board, 165 Pa.Super. 359, 67 A.2d 380, it was stated: "It is an elemental rule of statutory construction that a change of language in a statute indicates a change of legislative intent."

■ The new Pennsylvania Statutory Construction Act of December 6, 1972, (two months before the effective date of the Long Arm Statute) (Act Dec. 6, 1972, Act No. 290) lays down various rules for construing Pennsylvania Statutes. It is elementary, as stated in Section 1921, that we are to endeavor to ascertain and effectuate the intention of the General Assembly and we should consider also the occasion and necessity for the statute and the object to be attained. Considered in this light, it would appear that the purpose of this statute was to facilitate the flow of capital and cash into Pennsylvania by exempting foreign lenders from the doing

business tests. In this particular case, however, commitments for this mortgage did nothing to facilitate the flow of cash and capital into Pennsylvania for improvements or for purchase of Pennsylvania real estate. Rather, the purpose of this commitment was to export cash and capital from Pennsylvania for the construction of a large commercial facility in Birmingham, Alabama.

There is another control which must be considered under Act 290 as contained in Section 1928(b) wherein it is provided: "All provisions of a statute of the classes hereafter enumerated shall be strictly construed . . . (7) provisions decreasing the jurisdiction of a court of record".

We have already held that the jurisdiction of this court attaches under 42 P.S. § 8309(a) and (b) and the question is whether the jurisdiction is cut off by virtue of the exceptions in 8309(c). The section of the Statutory Construction Act above quoted is declaratory of the long existing Pennsylvania law on this subject. See Antonelli v. Xenakis, 363 Pa. 375, 69 A.2d 102 (1950).

■ As the Exception now stands in the Act of November 15, 1972, effective February 13, 1973, it appears to be limited to acquisition of real estate and mortgages and other liens and personal property in Pennsylvania. These third party defendants were not engaged in acquiring any real estate or mortgages thereon in Pennsylvania in making their contracts and commitment to the original defendant First Federal Savings and Loan of Erie. Rather, they were engaged in an ordinary contractual matter with the original defendant and since it appears that some of these activities looking to the making of such commitments and the making thereof occurred in Pennsylvania through correspondence, telephone calls and other negotiations, we should protect this Pennsylvania financial institution on its rights, if any,

against the third party defendants by requiring all these related controversies to be adjudicated in one suit and not require First Federal in the event of a judgment against it to proceed with suits in Oklahoma and New York City with varying possible results.

It will be noted that there is a paucity of authority with respect to 15 P.S. § 2011(D) and, of course, none at all with respect to 42 P.S. § 8309(c), the present exception with which we are now dealing. Section 2011(D) was considered by Judge Dumbauld of this court in Robinson v. Shearer & Sons, Inc., Civil Action No. 68–130 whose decision on this particular point was affirmed by the Third Circuit in Robinson v. Shearer & Sons, Inc., 429 F.2d 83 (3d Cir. 1970) reversing the lower court on other grounds. The Robinson case involved the purchase of personal property in Pennsylvania and the circuit indicated that the purchase and receipt of the barges in question in Pennsylvania without more was within the quoted exception in the Pennsylvania statute and therefore personal jurisdiction of the defendant was not obtained. Again, in Sampson-Miller Associated Companies v. Washington Homes, Inc., 303 F.Supp. 739 (W.D.Pa.1969), Judge Weber of this court referred to 2011(D) and upheld service on a foreign corporation engaged in activities similar to those of third party defendants in this case. Neither of these cases dealt with a situation such as we have here which does not involve the purchase and receipt of real or personal property but involves a breach of contract a part of which at least occurred in Pennsylvania. It will also be observed that these cases were all decided before the present Long Arm Statute was passed, with the deletion from 2011(D) as heretofore noted. For this reason, we do not consider them authority in this case.

We will therefore deny the motions to dismiss.