## McCrory Corporation *v.* Girard Rubber Corporation, Appellant.

Argued April 9, 1973. Before WEIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Norman H. Stark,* with him *James D. Cullen,* and *MacDonald, Illig, Jones & Britton,* for appellant.

*Wallace J. Knox,* with him *Knox, Graham, Pearson, McLaughlin & Sennett, Inc.,* for appellee.

OPINION BY HOFFMAN, J., June 14, 1973:

This appeal involves the question of whether appellant, a foreign corporation, was so "doing business" in Pennsylvania as to make it amenable to suit in the Commonwealth. This is a case of first impression in this Commonwealth in which we must specifically determine whether appellant's activities constituted "indirect shipments" within the meaning of 15 P.S. §2011 C of the Business Corporation Law, as amended in 1968.

On June 29, 1967, Rexford Daniel Fenton, by his parents, instituted a suit in Trespass against McCrory Corporation, hereinafter "McCrory". The minor boy lost an eye while playing with toy arrows purchased from de-

fendant's store. The case was tried on a theory of strict liability in tort under the Restatement of Torts (2d), §402A. The evidence adduced at trial disclosed that the minor-plaintiff had been injured by a toy arrow having a defective rubber suction cup tip. A verdict in the amount of $50,000 was awarded to the plaintiffs.

Following the entry of judgment, McCrory filed a Complaint in Assumpsit, on January 31, 1972, in the Court of Common Pleas of Erie County, against Girard Rubber Corporation, hereinafter "Girard". McCrory sought indemnification from Girard, which had manufactured the suction cup tip for the toy arrows. Girard filed preliminary objections alleging that the Pennsylvania court "lacks jurisdiction because the defendant is a corporation not doing business within Pennsylvania." The lower court dismissed these objections, and this appeal followed.[1]

Girard contends that it did not have sufficient contacts with Pennsylvania to warrant jurisdiction over it. It argues that no actual contact existed between the parties in Pennsylvania for it manufactured and sold the rubber tips to Rollin Wilson Company, a Tennessee corporation, which in turn sold the finished product to McCrory. There is evidence that Girard fills orders by telephone and through the mails to customers in Pennsylvania; that 5% of its gross sales are transacted with Pennsylvania customers; that orders are shipped into or through the Commonwealth by truck and at Girard's expense; and, that the suction rubber tips were constructed specifically for the purpose of being attached to toy arrows which would be sold in their finished state

---

[1] Jurisdiction for purposes of appeal from an order dismissing preliminary objections lies by virtue of the Act of 1925, March 5, P. L. 23, §1, 12 P.S. §672. All orders raising questions of jurisdiction are appealable to this Court as if they were final judgments.

to outlets around the nation. Despite these contacts, appellant contends that this State's "long arm" statute (§2011) does not reach out to make Girard amenable to suit in Pennsylvania.

The Pennsylvania Business Corporation Law provides a procedure for service of process upon foreign business corporations which "shall have done any business in this Commonwealth". 15 P.S. §2011B. In determining whether a particular corporation is amenable to suit, we must center our attention on subsection C for the definition of "doing business".

Prior to 1968, the Business Corporation Law provided the following definition: "For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'." 15 P.S. §2011C.

While often expressing liberal views toward amenability, our courts uniformly had construed our "long-arm statute" narrowly. As our Supreme Court stated in *Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177, 185, 240 A. 2d 505 (1967): "The legislature has defined what constitutes 'doing business' under §1011C as an *'entry'* of a foreign corporation into Pennsylvania for either of two purposes: (a) 'for the doing of a series of similar acts' to realize pecuniary profit or accomplishing an object or (b) 'doing a single act' for such purpose, intending to initiate a 'series of such acts'. The statute contemplates a systematic course of conduct as contrasted with isolated or sporadic occurrences (Citation omitted)." See also, *Swavely v. Vandegrift*, 397 Pa. 281, 154 A. 2d 779 (1959). *Swavely* and its progeny

judicially created what was known as the "solicitation plus" doctrine,[2] which severely limited the extension of suit over out-of-state corporations.

Pennsylvania maintained this conservative approach despite more liberal standards established by the United States Supreme Court decisions. In 1945, the Supreme Court of the United States, in the seminal case of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), relaxed these rigid standards: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. . . .' " 326 U.S. at 316.

"Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319.

Following *International Shoe,* numerous federal decisions adopted this liberal policy toward amenability, and employed the "minimum contacts" theory. In *Mc-Gee v. International Life Insurance Co.,* 355 U.S. 220 (1957), the United States Supreme Court found that the due process clause of the Fourteenth Amendment was not offended by subjecting an insurance company to the jurisdiction of the California courts, even though its only contact with the State was that insurance contracts were delivered to policyholders there. The Ninth

---

[2] This doctrine is specifically referred to in *Lutz v. Foster & Kester Co., Inc.,* 367 Pa. 125, 129, 79 A. 2d 222 (1951), where the Pennsylvania Supreme Court held that there "must be 'other activities' in addition to the solicitation of business to make a foreign corporation's conduct the doing of business within the Commonwealth. . . ."

Circuit, in *Duple Motor Bodies Ltd. v. Hollingsworth*, 417 F. 2d 231 (9th Cir. 1969), subjected a British manufacturer of coach bodies to the jurisdiction of the Hawaiian courts. As the Court stated at 235: "In our judgment, the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall (a middleman) with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.

"We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, *either directly or through normal distributive channels of trade*. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade." (Emphasis added)

Our Court expressed its disagreement with the immunity enjoyed by foreign corporations, whose products were used or passed through the Commonwealth and which caused injury to plaintiffs living in Pennsylvania. In *Cecere v. Ohringer Home Furniture Company*, 208 Pa. Superior Ct. 138, 220 A. 2d 350 (1966), we reversed the lower court's action dismissing a foreign corporation's preliminary objections that our courts had no jurisdiction in the matter. The company had shipped certain merchandise into the Commonwealth. We did so because we were bound to accept the existing "long-arm" statute, which required "entry" and substantial contacts, despite our disagreement with this conservative limitation of suit against foreign corporations. As we stated at pp. 147-148 of the opinion, "Thus, while the 'solicitation plus' rule has been extended, the Supreme Court in Swavely severely limited the concept of 'doing

business' by concluding that the distribution of products in Pennsylvania by the foreign corporation was not sufficient basis for jurisdiction. . . .

"This approach seems unduly harsh in an era of instant communication, rapid transportation and modern marketing methods which frequently involve distribution of products on a nationwide scale without regard to state boundaries. . . . To allow a company to send its products into interstate commerce and yet remain subject to suit only within its own state borders appears patently unfair.

". . . [A] manufacturer should be subject to jurisdiction when his product gives rise to a cause of action within a foreign jurisdiction, even though it had no other contact with the state. The foreign corporation's economic purpose and objective is to develop a market for its product in the foreign jurisdiction. It avails itself of the privilege of conducting activities within the state. It knows that its manner of commerce will have consequences in the foreign state."

Subsequent to our decision in *Cecere,* the Pennsylvania Legislature amended §2011C, altering the definition and scope of "doing business" as to broaden dramatically the reach of litigators over foreign corporations. That section, as amended in 1968, provides: "For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'. *For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth.*" (Emphasis added.)

We believe the activities of Girard, in the instant case, are encompassed by the "doing business" clause of §2011C, as amended. Girard manufactured suction tips, specifically to be placed on toy arrows. It sold its product to Rollin Wilson (a middleman), which in turn produced the toy arrows and sold the finished product to McCrory in Pennsylvania. Girard could reasonably foresee that its product would be sold "as part of the whole" arrow to outlets around the country, and that Pennsylvania would be one such market. On the facts of this case, we hold that Girard shipped merchandise "indirectly into or through this Commonwealth" so as to make it amenable to suit in Pennsylvania.

In addition, viewing Girard's activities in this State it would be otherwise amenable to suit. Girard admits that it takes orders from customers in Pennsylvania by telephone and through the mails. Deliveries are made into Pennsylvania at its own expense. Its gross sales from Pennsylvania amount to 5% of its total volume of business. "Doing business" is determined by the overall conduct of the defendant and not just isolated activity.

Consistent with the decisions in *International Shoe* and *McGee*, supra, we believe that our holding comports with due process and "traditional notions of fair play and substantial justice." Both judicial authority and the plain meaning of §2011C, as amended, provide sufficient basis for obtaining jurisdiction over Girard.

Order of the lower court dismissing preliminary objections is affirmed.