426 A.2d 628

**Denny L. GOFF, Appellant (at No. 454),**

**v.**

**ARMBRECHT MOTOR TRUCK SALES, INC., Jeep Corporation and American Motors Sales Corporation, a corporation,**

**v.**

**Joseph F. McBRIDE.**

**Appeal of: JEEP CORPORATION and American Motors Sales Corporation (at No. 483).**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Oct. 24, 1980.

Dennis Watson, Pittsburgh, for appellants, (at No. 483) and appellees, (at No. 454).

Richard B. Tucker, III, Pittsburgh, for Goff, appellant, (at No. 545) and for appellee, (at No. 483).

Michael V. Gilberti, Pittsburgh, for Armbrecht, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This case is the third of three long–arm jurisdiction cases that we decide today.[1] It comprises two appeals[2] from an order sustaining preliminary objections raising a question of jurisdiction and dismissing the complaint.

Accepting as true, for the purposes of this inquiry, all well–pleaded facts, *Frisch v. Alexson Equip. Corp.*, 423 Pa.

---

[1]. The other two are *Kingsley and Keith (Canada) Limited, et al. v. Mercer International Corp., et al.*, 284 Pa.Super. 524, 426 A.2d 618 (1980); *The Union National Bank of Pittsburgh, Exec'r v. L. D. Pankey Institute, et al.*, 284 Pa.Super. 537, 426 A.2d 624 (1980).

[2]. These appeals are Nos. 454 and 483 April Term 1979. Denny Goff, the plaintiff below, is appellant at No. 454 and appellee at No. 483. Armbrecht Motor Truck Sales, Inc., a defendant below, is appellee in both appeals. Jeep Corporation and American Motors Sales Corporation, defendants below, are appellees at No. 454 and appellants at No. 483. As used in this opinion, the term "appellant" refers to Denny Goff, the term "appellee", to Armbrecht Motor Truck Sales, Inc.

247, 224 A.2d 183 (1966), the complaint[3] may be summarized as follows. Appellant is a resident of Mineral Springs, Ohio. Appellee is an Ohio corporation that sells automobiles from its principal place of business in Youngstown, Ohio. Appellant purchased a Jeep, manufactured by American Motors Corporation, from appellee. Appellant was a passenger in the Jeep when it went out of control and collided with a guardrail on Interstate Route 80 in Pennsylvania. Appellant sustained severe and permanent injuries as a result of the accident.

Appellee's answers to appellant's interrogatories revealed that appellee had the following contacts in Pennsylvania. For 36 years appellee has been listed in the Driver's Directory of GMC Truck Dealers, which is distributed in this state; it advertises occasionally in one Youngstown newspaper, which may have Pennsylvania readers, and two Youngstown radio stations, which may have Pennsylvania listeners;[4] it has sold vehicles to Pennsylvania residents, although all sales were made in Ohio; it has sent parts and accessories to Pennsylvania residents; not more than ten times a year, it has sent officers into Pennsylvania to secure notary service for titles regarding sales of vehicles to Pennsylvania residents; some factory mailing lists, not sent at appellee's request, may have included Pennsylvania residents; it orders some of its vehicle products, parts and accessories from two supply centers in Pennsylvania, although the items ordered may not have come originally from Pennsylvania; on at least one occasion, it has delivered a car purchased in Ohio to a Pennsylvania resident.

3. In fact, it is an amended complaint. The original complaint was amended to change Armbrecht Equipment, Inc., to Armbrecht Motor Truck Sales, Inc.

4. Youngstown is approximately ten miles from the Pennsylvania border. *See* Rand McNally Road Atlas–United States, Canada and Mexico 75 (1980). This fact is not of record, but a court may take judicial notice of geographical facts such as the county in which a city or town is located, *Emert v. Larami Corp.*, 414 Pa. 396, 200 A.2d 901 (1964), or the distance between places, *Blanning v. Tisch*, 378 F.Supp. 1058 (E.D.Pa. 1974). An appellate court may take judicial notice of a fact to the same extent as a trial court. *See* McCormick, Evidence § 333 (2nd ed. 1972).

■ Our approach to the long–arm jurisdiction case may be seen from our other decisions today. *Kingsley and Keith (Canada) Limited, et al., v. Mercer International Corp., et al.,* 284 Pa.Super. 524, 426 A.2d 618 (1980); *Union National Bank of Pittsburgh, Exec'r. v. L. D. Pankey Institute et al.,* 284 Pa.Super. 537, 426 A.2d 624 (1980). First, we apply the three–part test formulated in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974), where we stated:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* supra, [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington,* supra, [326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945)]; *see Southern Mach. Co. v. Mohasco Indus., Inc.,* supra, [401 F.2d 374 (6th Cir. 1968)]; *see also In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir. 1963).

Second, if this test is not satisfied, we determine whether the non–resident defendant's activities in Pennsylvania were "continuous and substantial." *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974).

–1–

–a–

As just noted, the first part of the *Proctor* test is that it must appear that the defendant has "purposefully availed itself of the privilege of acting within [Pennsylvania]." In deciding whether the record here shows that appellee so

availed itself, it will be convenient to consider first an argument particularly urged upon us by appellant.

–i–

Appellant particularly urges that in selling him a Jeep, appellee availed itself of the privilege of acting within Pennsylvania, for appellee could reasonably foresee that appellant might drive the Jeep from Ohio into Pennsylvania.

In *World–Wide Volkswagen Corporation et al., v. Charles S. Woodson, District Judge of Creek County, Oklahoma, et al.,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court was faced with essentially the same argument.[5]  There, two New York residents were injured while riding in an automobile in Oklahoma.  They had purchased the automobile from a New York dealer, who in turn had procured it from a New York distributor.  Although neither the dealer nor distributor had engaged in any activities in Oklahoma, the New York residents sued them there.  The Court summarized the New York residents' claims as follows:

> [The residents] seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.  444 U.S. at 295, 100 S.Ct. at 566.

The Court rejected this claim because neither the distributor nor dealer had any "contacts, ties, or relations" with Oklahoma.  The Court could not find that any of defendants' activities, which were confined to the New York area, reflected a purposeful availment of the privilege of acting within Oklahoma, nor did it believe that the New York

5.  The Supreme Court granted certiorari in *World–Wide Volkswagen* to resolve a conflict between the "Supreme Court of Oklahoma and the highest courts of at least four other states [*Tilley v. Keller Truck and Implement Corp.*, 200 Kan. 641, 438 P.2d 128 (1968); *Granite Sales Volkswagen, Inc., v. District Court*, 177 Colo. 42, 492 P.2d 624 (1972); *Pellegrini v. Sachs and Sons*, 522 P.2d 704 (Utah 1974); *Oliver v. American Motors Corp.*, 70 Wash.2d 875, 425 P.2d 647 (1967)]."  48 LW at 4081, 444 U.S. at 289, 100 S.Ct. at 563.

residents' "unilateral" act of driving into Oklahoma could supply the missing ties with that state. The Court stated:

> When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla, supra,* at 253, 78 S.Ct. at 1240, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. 444 U.S. at 295, 100 S.Ct. at 566.

Thus, the key inquiry is *not* whether there is a "likelihood that a product will find its way into the forum state," but rather whether "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *See Kulko v. Superior Court, supra,* 436 U.S. 84 at 97–98, 98 S.Ct. 1690, at 1699–70, 56 L.Ed.2d 132; *Shaffer v. Heitner, supra,* 433 U.S. 186 at 216, 97 S.Ct. 2569 at 2586, 53 L.Ed.2d 683; *and see id.,* at 217–219, 97 S.Ct. at 2586–2587 (STEVENS, J., concurring in the judgment)."

■ In light of *World–Wide Volkswagen,* we cannot agree with appellant that by selling him a Jeep in Ohio, which later was involved in an accident in Pennsylvania, appellee "purposefully availed itself of the privilege of acting with [Pennsylvania]." [6] *See Granite States Volkswagen, Inc. v. District Court, supra; Tilley v. Keller Truck and Implement Corp., supra; Pellegrini v. Sachs and Sons, supra; Oliver v. American Motors Corp., supra; cf. Kerrigan v. Clarke*

**6.** Appellant relies heavily on several cases that have been undercut by the Supreme Court's decision in *World–Wide Volkswagen.* Most obviously, the Oklahoma Supreme Court's decision in *World–Wide Volkswagen* is no longer valid. *Reilly v. Phil Tolkan Pontiac, Inc.,* 372 F.Supp. 1205 (D. N.J. 1974), which held that New Jersey had jurisdiction over a Wisconsin car dealer who sold the plaintiff a defective tire jack that caused damage in New Jersey, was criticized by the Supreme Court in *World–Wide Volkswagen. Roch v. Floral Rental Corp.,* 95 N.J.Super. 555, 232 A.2d 162 (1967), *aff'd* 51 N.J. 26, 237 A.2d 265 (1968), the New Jersey case on which *Reilly v. Phil Tolkan Pontiac, Inc., supra,* is based, may therefore also be suspect. Finally, *Tyson v. Whitaker and Son, Inc.,* Me., 407 A.2d 1 (1979), is on its facts very similar to *World–Wide Volkswagen.*

*Gravely Corp.*, 71 F.R.D. 480 (M.D. Pa. 1975) (Pennsylvania has no jurisdiction over New Jersey defendant where only significant contact with Pennsylvania is that Pennsylvania residents brought a tractor to defendant for repair; *Knapp v. Franklin Coach Co.*, 365 F.Supp. 305 (W.D.Pa.1973) (Pennsylvania has no jurisdiction over Ohio defendant performing repairs on truck with Indiana license plates where truck is driven into Pennsylvania and has accident there); *Maloof v. Raper Sales, Inc.*, 113 Ariz. 485, 557 P.2d 522 (1976) (Arizona has no jurisdiction over Indiana repair shop that repairs automobile that later breaks down in Arizona); *Bev–Mark, Inc., d/b/a Tuboy Trucking Company, et al., v. Summerfield GMC Truck Co., Inc., et al.*, 268 Pa.Super. 74, 407 A.2d 443 (1979) (Pennsylvania has no jurisdiction over Indiana garage that repairs truck that later has accident in Pennsylvania). It may be granted that when it sold the Jeep to appellant, appellee could have foreseen that appellant might drive the Jeep into Pennsylvania and have an accident here. Appellee could also have foreseen that appellant might drive the Jeep into other neighboring states, or even into states farther away. However, *World–Wide Volkswagen* does not focus on the foreseeable consequences of the "unilateral activity" of the plaintiff, but on whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [7] Appellant is a resident of Ohio. We are unwilling to hold that in selling him a Jeep, appellee should have reasonably anticipated being "haled into court" in Pennsylvania. Were we so to hold we should take all meaning away from the concept that the defendant must "purposefully avail" himself of the privilege of acting within the forum state, and that concept is defined in *World–Wide Volkswagen*. As the Supreme Court points out, the essence of the concept is that if a foreign business finds that the costs of doing business in any

---

**7.** Indeed, BRENNAN, J., suggests that "[t]he Court's opinions [referring also to the companion case of *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)] focus tightly on the existence of contacts between the forum state and the defendant." 444 U.S. at 298, 100 S.Ct. at 567.

given state are too high, it should be able effectively to sever its connection with that state. If we were to adopt appellant's argument, appellee could never sever its connection with Pennsylvania, short of going out of business entirely, for any automobile it sold might be driven into Pennsylvania and have an accident there. Nor could appellee sever its connection with any other state where a buyer might conceivably travel.

Moreover, we are not persuaded by appellant's citation of several cases upholding jurisdiction over foreign manufacturers that had shipped goods into a state, sometimes in a highly indirect manner. *See e. g., Coulter v. Sears, Roebuck and Co.*, 426 F.2d 1315 (5th Cir. 1970); *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969); *Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130 (M.D. Pa. 1978); *Keene v. Multicore Soldiers Ltd.*, 379 F.Supp. 1279 (E.D. Pa. 1974); *Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D. Pa. 1971); *Buckeye Boiler v. Superior Court of Los Angeles County*, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969); *Duignan v. A. H. Robins Co.*, 98 Idaho 134, 559 P.2d 750 (1977); *Gray v. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Andersen v. National Presto Industries, Inc.*, 257 Iowa 911, 135 N.W.2d 639 (1965); *Ehlers v. U. S. Heating and Cooling Mfg. Corp.*, 267 Minn. 56, 124 N.W.2d 824 (1963); *Metal–Matic, Inc., v. The Eighth Judicial District Court*, 82 Nev. 263, 415 P.2d 617 (1966); *Washington v. Suzuki Motor Corp.*, 257 Pa.Super. 482, 390 A.2d 1339 (1978); *Kitzinger v. Gimbel Bros., Inc.*, 240 Pa.Super. 345, 368 A.2d 333 (1976); *Deere v. Zilber*, 234 Pa.Super. 273, 338 A.2d 615 (1975); *McCrory Corp. v. Girard Rubber Corp.*, 225 Pa.Super. 45, 307 A.2d 435 (1973), *aff'd*, 459 Pa. 57, 327 A.2d 8 (1974).

The seminal case among these is *Gray v. American Radiator and Standard Sanitary Corp., supra.* There, a foreign manufacturer of valves had installed a valve in a water heater, which was then shipped into Illinois, where it exploded and caused injury. The Illinois court upheld its jurisdiction over the manufacturer, stating:

Where the alleged liability arises, as in this case from the manufacture of products presumably *sold in contemplation of use here*, it should not matter that the purchase was made from an independent middleman or that someone other than defendant shipped the product into this state. 22 Ill.2d at 442, 176 N.E.2d at 766 (Emphasis added).

In *World–Wide Volkswagen*, the Court suggested in dictum that *Gray* was distinguishable from the case before it:

Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. at 295, 100 S.Ct. at 566.

Since in *Gray* it was not only "foreseeable" but the manufacturer's "expectation" that its valve would end up in Illinois, it was "reasonable" that the manufacturer should be "haled into court there."

This distinction between a dealer or distributor seeking to serve a limited market, like the New York distributor and dealer in *World–Wide Volkswagen*, and a manufacturer seeking to serve a larger market, like the manufacturer in *Gray*, has been endorsed elsewhere. In *Developments–Jurisdiction*, 73 Harv.L.Rev. 909, 929, (1960), the writer commented:

It does not seem desirable to subject the California dealer who has sold tires to a Pennsylvania tourist to jurisdiction in Pennsylvania. However, it does seem that jurisdiction should be upheld over a California tire manufacturer who

cannot be thought of as doing business within the state. While it is foreseeable by both defendants that their wares will be used in Pennsylvania, one is set up to do business locally whereas the other depends upon foreign consumption. Thus, it would seem unreasonable to force the local dealer to be prepared to defend suits on a nationwide scale, while the national manufacturer which depends upon a national market can be so prepared. Here, appellee did not sell the Jeep to appellant as part of any effort to serve the Pennsylvania market or any consumers here.

–ii–

■ Our conclusion that appellee's sale of the Jeep cannot by itself support a finding that appellee "purposefully availed itself of the privilege of acting within [Pennsylvania]" does not end our inquiry, for we must still determine whether appellee in other ways availed itself of the privilege.

Unlike the automobile distributor and dealer in *World–Wide Volkswagen*, appellee had a variety of contacts with Pennsylvania. We have identified these above, when we summarized appellee's answers to appellant's interrogatories; it is therefore enough to refer to them at this point only generally. Of appellee's contacts with Pennsylvania, the most are that appellee advertised in media–one Youngstown newspaper and two Youngstown radio stations–likely to reach a Pennsylvania audience; that it sold vehicles to Pennsylvania residents; that it has performed various services in Pennsylvania pursuant to those sales; and that it is dependent on Pennsylvania suppliers for various vehicle products, parts, and accessories.

On the basis of this evidence, we think it reasonable to say that appellee has "purposefully availed itself of the privilege of acting within [Pennsylvania]." Its various contacts with Pennsylvania represent the sort of "affiliating" circumstances necessary for state court jurisdiction, to which the Court alluded in *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566, but which were not present in that case.

–b–

■ The second part of the *Proctor* test, it will be recalled, is that it must appear that "the cause of action [arose] from defendant's activities within the forum state." 228 Pa.Super. at 19, 323 A.2d at 15. On the basis of the present record, we cannot conclude that this requirement has been satisfied. To be sure, the accident on Interstate Route 80 in Pennsylvania, in which appellant was injured, might conceivably have been related to one of appellee's contacts with Pennsylvania; but nothing in the record suggests that it was. Appellee's sale of the Jeep to appellant, an Ohio resident, was not the product of any solicitation in Pennsylvania; appellee performed no services in Pennsylvania for appellant pursuant to the sale; and there is no evidence that the accident was caused by any part purchased by appellee from a Pennsylvania supplier.

–2–

■ Having concluded that the *Proctor* test of jurisdiction over appellant as a foreign defendant has not been satisfied in all of its parts, we must determine whether appellant's activities in Pennsylvania have been "continuous and substantial." *Bork v. Mills, supra; Kingsley and Keith (Canada) Limited et al., v. Mercer International Corp., et al., supra; The Union National Bank of Pittsburgh, Exec'r., v. L. D. Pankey Institute et al., supra; Whalen and Whalen v. Walt Disney World Company Insurance Company of North America,* 274 Pa.Super. 246, 418 A.2d 389 (1980); *Lebkuecher v. Loquasto,* 255 Pa.Super. 608, 389 A.2d 143 (1978); *Garfield v. Homowack Lodge, Inc.,* 249 Pa.Super. Ct. 392, 378 A.2d 351 (1977).

Since we have stated these cases in *Kingsley and Keith (Canada) Limited, et al., v. Mercer International Corp., et al., supra,* we need not discuss them here. It is enough to say that on the basis of the present record, we are unable to determine whether appellee engaged in "continuous and substantial activities" within this state. On the one hand, appellee's activities in this state appear to have been "con-

tinuous", for they appear to have occurred over a considerable period of time. On the other, it is difficult to determine whether these activities have been "substantial", for we do not know the relationship between the activities and appellee's business as a whole. For example, the evidence that appellee sold ten vehicles to Pennsylvania residents in the last year has little meaning without knowing what percentage of the total sales these sales represent. The same may be said regarding the evidence concerning appellee's advertising and its purchase of parts from Pennsylvania suppliers. We shall therefore remand this case to the lower court so that it may determine, after such further proceedings as may be appropriate, whether appellee has conducted "continuous and substantial activities" within this state. *See e. g., Envirosystems Corporation v. Weinhardt, et al.,* 271 Pa.Super. 66, 412, A.2d 577 (1979); *Laffey v. Lehigh Val. Dairy Co–Op.,* 257 Pa.Super. 45, 390 A.2d 238 (1978).

The order of the lower court is vacated and the case is remanded for further proceedings consistent with this opinion. Either party may take a new appeal from such proceedings.

HOFFMAN, J., concurs in the result.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

I concur with the majority in that part of the opinion which deals with the *Proctor* test for determining jurisdiction over a foreign defendant.

I respectfully dissent, however, from that part of the decision of the majority which remands the case to determine whether appellee has conducted continuous and substantial activities within this state so as to make it reasonable for us to exercise jurisdiction.

In my judgment, not only did the pleadings fail to allege sufficient facts to warrant our exercise of jurisdiction, but the record below already contains enough evidence for a determination that appellee has not conducted the "substan-

tial" activities necessary for this state to exercise jurisdiction over an unrelated cause of action. *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974).

Therefore I would affirm the order of the Court below which sustains appellee's preliminary objections.