426 A.2d 624

The UNION NATIONAL BANK OF PITTSBURGH, Executor of the Estate of Frederic S. Kinsel, Appellant (at No. 467),

v.

L. D. PANKEY INSTITUTE and Hugh R. Gilmore, III, M.D.,

Appeal of L. D. PANKEY INSTITUTE (at No. 432).

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed Oct. 24, 1980.

538

Michael W. Burns, Pittsburgh, for L. D. Pankey Institute, appellant, (at No. 432) and for appellee, (at No. 467).

Dennis A. Watson, Pittsburgh, for appellee, (at No. 432).

Michael Kearney, Jr., Pittsburgh, for Union Nat., appellant, (at No. 467).

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This case is the second of three long–arm jurisdiction cases that we decide today.[1] It comprises two appeals,[2] one by one of the two defendants below, the other by the plaintiff below. The plaintiff is the Union National Bank of Pittsburgh. As executor of the estate of Frederic Kinsel, it sued L. D. Pankey Dental Institute, Inc.,[3] and Hugh R. Gilmore, III, M.D. In response to preliminary objections raising a question of jurisdiction, the lower court held that the Dental Institute was subject to its jurisdiction, but that Dr. Gilmore was not. Appeal No. 432 is Dental Institute's appeal from the order holding it in; Appeal No. 467 is Union National's appeal from the order letting Dr. Gilmore out.

1. The other cases are *Kingsley and Keith (Canada) Limited, et al., v. Mercer International Corp., et al.*, 284 Pa.Super. 524, 426 A.2d 618 (1980); *Goff v. Armbrecht Motor Truck Sales, Inc., et al.*, 284 Pa.Super. 547, 426 A.2d 628 (1980).

2. These appeals are Nos. 432 and 467 April Term, 1979. The Union National Bank of Pittsburgh, Executor of the Estate of Frederic S. Kinsel, is appellee at No. 432 and appellant at No. 467. The L. D. Pankey Dental Institute, Inc., is appellant at No. 432 and appellee at No. 467. Hugh R. Gilmore, III, M.D., is appellee at Nos. 432 and 467.

3. Although appellant is described in the caption as the L.D. Pankey Institute, its proper name is the L.D. Pankey Dental Institute, Inc. The lower court has granted The Union National Bank of Pittsburgh leave to amend its caption to identify appellant correctly.

Accepting as true, for the purposes of this inquiry, all well–pleaded facts, *Frisch v. Alexson Equip. Corp.*, 423 Pa. 247, 224 A.2d 183 (1966), Union National's complaint may be summarized as follows. Union National is the executor of the estate of Frederic S. Kinsel. The Dental Institute is a corporation with its principal place of business in Miami, Florida. Dr. Gilmore is a physician licensed to practice medicine in Florida, and his office is in Miami. On or about January 19, 1977, Frederic S. Kinsel, a dentist, at the direction of the Dental Institute went to Dr. Gilmore for a physical examination and treadmill test. After completing the physical examination and treadmill test, Dr. Kinsel suffered a cardiac arrest and died. Stated generally, the allegation is that Dr. Kinsel's death was caused by the Dental Institute's and Dr. Gilmore's negligence, and both survival and wrongful death damages are sought. There is also an allegation that the Dental Institute violated "implied warranties and/or contractual obligations."

The Dental Institute's preliminary objections alleged as follows: it is a non–profit corporation organized under the laws of Florida; its only business is advanced dental education; it is not qualified to do business in Pennsylvania; has not incurred or paid taxes in this state; has not appointed an agent for service of process in this state; is not listed in any telephone directories in this state; has not filed any reports with any governmental agency in this state; has no assets, offices or any place of business in this state; has no officers, agents, employees, salesmen, representatives, teachers or professors in this state; and does not ship any goods into or through this state. Dr. Gilmore's preliminary objections were substantially to the same effect, alleging as follows: he lives in Miami and practices medicine only in Florida; he is not licensed to practice medicine in Pennsylvania; he has not incurred or paid any taxes in this state; has not appointed an agent for service of process in this state; is not listed in any telephone directory in this state; has not filed any reports with any governmental agency in this state; has no assets or office or place of business or

representative in this state; and has shipped no merchandise into or through, or solicited any business in, this state.

It does not appear that any of the foregoing allegations is controverted, for Union National did not file answers to the preliminary objections; it did file interrogatories. The Dental Institute's answers to the interrogatories revealed that the institute has had some contacts with Pennsylvania. From 1974 to 1978, 125 dentists from Pennsylvania, including Dr. Kinsel, enrolled in the institute's advanced dental education programs. These dentists paid over $100,000 in tuition to the institute. They were not solicited by the institute at their homes or offices in Pennsylvania; rather, they called or wrote the institute's registrar for information. In response, the registrar sent information packets regarding the classes, and on the basis of this, the dentists selected dates convenient to them and sent their enrollment fees. Since 1974, the registrar has sent between 165 and 250 answers to such requests for information from Pennsylvania dentists. One faculty member of the institute's faculty lived in Pennsylvania, but the institute did not recruit him here; he applied on his own initiative. Between 1974 and 1977, the institute purchased slightly over $200 worth of goods from companies located in Pennsylvania. Dr. Gilmore's answers to the interrogatories revealed that his only contacts with Pennsylvania were that he was listed in two national directories, presumably distributed in Pennsylvania, and had attended one medical convention in this state. It also appeared from his answer that he was a member of the Dental Institute's staff and that the institute paid him a fee for each physical examination that he conducted.

In our opinion filed today in *Kingsley and Keith (Canada), Limited, et al. v. Mercer International Corp., et al.*, 284 Pa.Super. 524, 426 A.2d 618 (1980), we have stated the principles that we must apply in deciding whether the Dental Institute and Dr. Gilmore are subject to suit in Pennsylvania. Our decision here may therefore be brief.

In *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974), we formulated a three—part test of jurisdiction over a defendant:

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla, supra* [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283]. Secondly, the cause of action must arise from defendant's activities within the forum state. *See Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir. 1968); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550 (D.Conn.1968). Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. *International Shoe Co. v. Washington, supra* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95]; *see Southern Mach. Co. v. Mohasco Indus., Inc., supra; see also In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972); *Kourkene v. American BBR, Inc.,* 313 F.2d 769 (9th Cir. 1963).

*And see Bev–Mark, Inc., d/b/a Tuboy Trucking Company, et al. v. Summerfield GMC Truck Co., Inc., et al.,* 268 Pa.Super. 74, 407 A.2d 443 (1979). Here, Dr. Kinsel's death was not the result of anything that either the Dental Institute or Dr. Gilmore did in Pennsylvania. Accordingly, the second part of the test formulated in *Proctor & Schwartz, supra,* has not been met, and if either the institute or the doctor is to be held subject to suit in Pennsylvania, it must be on some other basis.

■ A defendant may be subject to suit in Pennsylvania, even when the cause of action does not arise from the defendant's activities here, if the defendant has engaged in other activities here that may fairly be characterized as "continuous and substantial." *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974); *Kingsley and Keith (Canada) Limited, et al. v. Mercer International Corp., et al.,* 283 Pa.Super. 524, 426 A.2d 618 (1980); *Whalen and Whalen v. Walt Disney World Company and Insurance Company of North America,* 274 Pa.Super. 246, 418 A.2d 389 (1980); *Lebkuecher v. Loquasto,* 255 Pa.Super. 608, 389 A.2d 143 (1978); *Garfield v. Homowack Lodge, Inc.,* 249 Pa.Super. 392, 378 A.2d 351 (1977).

The record cannot support a finding that the Dental Institute has engaged in activities in Pennsylvania that were both "continuous" and "substantial." Its activities have been "continuous," for since 1974 it has sent packets of information regarding its classes to between 165 and 250 dentists in Pennsylvania; but they have not been "substantial," for except for sending the packets, and buying slightly over $200 worth of goods, the institute has done nothing, owns nothing, and is represented by no one, in Pennsylvania. It may be granted that the number of Pennsylvania dentists who from 1974 to 1978 have enrolled in the institute's classes—125—and the total tuition they have paid—over $100,-000—are both "substantial." However, the "continuous and substantial activities" test refers to activities by the defendant, not by someone else, who might bring suit against the defendant in Pennsylvania. It would be unfair, and therefore a violation of the Fourteenth Amendment, to subject a defendant to suit not because of what it did but because of what someone else did. *See World–Wide Volkswagen Corporation, et al., v. Charles S. Woodson, District Judge of Creek County, Oklahoma, et al.,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, in *Garfield v. Homowack Lodge, Inc., supra,* for example, this state had jurisdiction over the defendant because the defendant had engaged in an extensive advertising campaign in this state; this state did not have jurisdiction over the defendant because a given number of Pennsylvania residents had responded to defendant's advertisements. Here, the Dental Institute engaged in no advertising or solicitation of any sort in Pennsylvania; dentists wrote or called the institute on their own initiative, and it was only then, and in response, that the institute sent into Pennsylvania packets of information regarding its classes. We must therefore reverse the lower court's order dismissing the institute's preliminary objections and holding it subject to the court's jurisdiction.

However, the lower court properly concluded that it did not have jurisdiction over Dr. Gilmore. His activities in Pennsylvania were neither "continuous" nor "substantial";

he attended one medical convention in this state, and was listed in two national directories presumably distributed here.

The order of the lower court dismissing appellant, L. D. Pankey Dental Institute's preliminary objections raising a question of jurisdiction is vacated, and the complaint against it is dismissed.

The order of the lower court sustaining appellee, Hugh R. Gilmore's preliminary objections raising a question of jurisdiction and dismissing the complaint against him is affirmed.